# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | | | |
|---|---|---|---|
| TAYLOR MADE SOFTWARE, INC., | : | | |
| | : | | |
| Plaintiff, | : | Civil Action No.: | 19-202 (RC) |
| | : | | |
| v. | : | Re Document Nos.: | 9, 10 |
| | : | | |
| KENNETH T. CUCCINELLI, Senior Official Performing the Duties of the Director, United States Citizen and Immigration Services,[1] | : : : : | | |
| | : | | |
| Defendant. | : | | |

## MEMORANDUM OPINION

### GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT

Under the H-1B program, non-citizens can temporarily work in the United States if they are sponsored by an employer in a "specialty occupation." Immigration and Nationality Act ("INA"), 8 U.S.C. § 1101(a)(15)(H)(i)(b). Plaintiff Taylor Made Software, Inc. ("Taylor Made") filed a H-1B petition on behalf of its intended beneficiary, Mr. Venkatesan Kannan, who planned to work for the company as a computer systems analyst. The petition was denied by the United States Citizenship and Immigration Services ("USCIS") on grounds that Taylor Made failed to establish that the position was a "specialty occupation" under the INA and associated regulations. Invoking the judicial review procedures of the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 701 *et seq.*, Taylor Made sued the USCIS Director, contending that the agency's decision was arbitrary and/or capricious. Currently pending before the Court are the

---

[1] Mr. Kenneth T. Cuccinelli is automatically substituted for Former Director L. Francis Cissna. *See* Fed. R. Civ. P. 25(d).

parties' cross-motions for summary judgment. For the reasons explained below, the Court grants Plaintiff's motion, denies Defendant's, and remands to the agency for further consideration.

## I. BACKGROUND

### A. Legal Framework

The INA empowers employers to petition for H-1B nonimmigrant visas on behalf of alien beneficiaries. 8 U.S.C. § 1184(c)(1). To secure a H-1B visa, an employer first submits to the Department of Labor ("DOL") a Labor Condition Application ("LCA"), which identifies the specialty occupation at issue and certifies that the company will comply with the requirements of the H-1B program. 8 U.S.C. § 1182(n)(1). Then, once the DOL has certified the LCA, the employer submits it (together with a Form I-129 petition) to USCIS. 8 C.F.R. § 214.2(h)(4)(i)(B). USCIS ultimately determines whether a position counts as a specialty occupation, *see* 20 C.F.R. § 655.715, and the employer bears the burden of convincing the agency that the position so qualifies and the applicant is otherwise eligible for a visa, *see* 8 U.S.C. § 1361 ("Whenever any person makes application for a visa or any other document required for entry, . . . the burden of proof shall be upon such person to establish that he is eligible to receive such visa.").

For the purposes of the H-1B program, the INA defines a "specialty occupation" as one that requires "(A) theoretical and practical application of a body of highly specialized knowledge, and (B) attainment of a bachelor's or higher degree in the specific specialty (or its equivalent) as a minimum for entry into the occupation in the United States." 8 U.S.C. § 1184(i)(1). In line with that statutory definition, the applicable regulations define a specialty occupation as one that "requires the attainment of a bachelor's degree or higher in a specific specialty" or its equivalent, plus "theoretical and practical application of a body of highly

specialized knowledge in fields of human endeavor including, but not limited to, architecture, engineering, mathematics, physical sciences, social sciences, medicine and health, education, business specialties, accounting, law, theology, and the arts." 8 C.F.R. § 214.2(h)(4)(ii) ("Definitions"). The next subparagraph in the regulations provides more specific criteria (or prerequisites) as to what qualifies:

> To qualify as a specialty occupation, the position must meet one of the following criteria:
> (1) A baccalaureate or higher degree or its equivalent is normally the minimum requirement for entry into the particular position;
> (2) The degree requirement is common to the industry in parallel positions among similar organizations or, in the alternative, an employer may show that its particular position is so complex or unique that it can be performed only by an individual with a degree;
> (3) The employer normally requires a degree or its equivalent for the position; or
> (4) The nature of the specific duties are so specialized and complex that knowledge required to perform the duties is usually associated with the attainment of a baccalaureate or higher degree.

*Id.* § 214.2(h)(4)(iii)(A) ("Criteria for H-1B petitions involving a specialty occupation"); *see also Defensor v. Meissner*, 201 F.3d 384, 387 (5th Cir. 2000) ("assum[ing] arguendo that § 214.2(h)(4)(iii)(A) creates [a] necessary and sufficient condition[] for the category of 'specialty occupation'" but acknowledging that the provision could also "be read as merely an additional requirement that a position must meet, in addition to the statutory . . . definition").

### B. Case Background

Taylor Made is a small, Chicago-based software development company with ten employees. AR 30, 35.[2] On April 12, 2018, it filed a Form I-129 Petition for Mr. Kannan, AR at 4, whom it sought to employ as a computer systems analyst, AR 34. According to the petition,

---

[2] "AR" refers to the certified administrative record filed in this case. *See* Administrative Record, ECF Nos. 15 & 15-1. The corresponding page numbers refer to the stamped Bates numbers.

3

Mr. Kannan holds a Master of Science in Computer Science from the University of Illinois. AR 42. In a letter accompanying the petition, Taylor Made outlined the duties of the proposed role and explained why it qualified as a specialty occupation position. AR 197–98.

On May 1, 2018, USCIS issued a request for evidence ("RFE"), seeking additional proof that the position qualified as a specialty occupation. AR 201–12. In response, Taylor Made mustered a variety of supporting evidence, including: (a) a more detailed description of the position, (b) relevant excerpts from various DOL documents (including the *Occupational Outlook Handbook* and O*Net Online database), (c) an expert opinion from a Dr. Michael Lavine (a Professor at the University of Maryland), (d) job advertisements for comparable positions in the industry, and (e) a summary of the qualifications possessed by other computer systems analysts employed at Taylor Made. AR 216–24. Notwithstanding the additional evidence, USCIS denied the petition. AR at 4. The decision explained each of the four § 214.2(h)(4)(iii)(A) criteria and why Taylor Made failed to prove that any of the criteria were met. AR at 7–13.

In this suit, Taylor Made seeks review of that decision. *See* Compl. 9–11, ECF No. 1. Currently ripe and pending before the Court are the parties' cross-motions for summary judgment. *See* Pl.'s Mem. Supp. Mot. Summ. J. ("Pl.'s MSJ"), ECF No. 9-1; Def.'s Mem. Supp. Cross-Mot. Summ. J. & Opp'n ("Def.'s XMSJ"), ECF No. 10-1.

## II. LEGAL STANDARD

Normally, summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). But this standard does not govern cases involving review of agency action under the APA "because of the limited role of a court in reviewing the administrative

4

record." *Ctr. for Food Safety v. Salazar*, 898 F. Supp. 2d 130, 138 (D.D.C. 2012). In these contexts, "[i]nstead of reviewing the record for disputed facts that would preclude summary judgment, the function of the district court is a more limited one: 'to determine whether or not as a matter of law the evidence in the administrative record permitted the agency to make the decision it did.'" *Ardmore Consulting Grp., Inc. v. Contreras-Sweet*, 118 F. Supp. 3d. 388, 393 (D.D.C. 2015) (quoting *Kaiser Found. Hosps. v. Sebelius*, 828 F. Supp. 2d 193, 198 (D.D.C. 2011)).

The ultimate standard is whether the agency action was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). Review under that standard is "highly deferential." *AT&T, Inc. v. FCC*, 886 F.3d 1236, 1245 (D.C. Cir. 2018) (quoting *Nat'l Tel. Coop. Ass'n v. FCC*, 563 F.3d 536, 541 (D.C. Cir. 2009)). To pass muster, an agency must have only "'examine[ed]' the relevant factors and data and articulate[d] a 'rational connection' between the record and [its] decision." *Id.* (first quoting *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983); then quoting *Burlington Truck Lines v. United States*, 371 U.S. 156, 168 (1962)). At the same time, though, judicial review is not toothless: a court will find an agency acted arbitrarily or capriciously "if it has relied on factors Congress did not intend it to consider, entirely failed to consider an important aspect of the problem, or offered an explanation either contrary to the evidence before the agency or so implausible as to not reflect either a difference in view or agency expertise." *Defs. of Wildlife v. Jewell*, 815 F.3d 1, 9 (D.C. Cir. 2016).

### III. ANALYSIS

In challenging the USCIS decision, Taylor Made makes two main arguments. First, it suggests that the agency has impermissibly "repudiate[d] the plain language" of 8 C.F.R. §

5

214.2(h)(4)(iii)(A). Pl.'s MSJ at 32. Second, it argues that, even under USCIS's interpretation of the regulatory framework, the agency still erred in its analysis of the relevant § 214.2(h)(4)(iii)(A) factors when it concluded that a computer systems analyst position was not a specialty occupation. *Id.* at 36.

### A. USCIS's Interpretation of 8 C.F.R. § 214.2(h)(4)(iii)(A)

Taylor Made's first argument zeroes in on an acknowledged discrepancy between the statutory text and the language of 8 C.F.R. § 214.2(h)(4)(iii)(A). INA itself defines "specialty occupation" as one that requires the "attainment of a bachelor's or higher degree *in the specific specialty* (or its equivalent) as a minimum for entry into the occupation in the United States." 8 U.S.C. § 1184(i)(1)(B) (emphasis added). One part of the applicable regulations echoes that language. *See* 8 C.F.R. § 214.2(h)(4)(ii) (requiring "the attainment of a bachelor's degree or higher *in a specific specialty*" or its equivalent) (emphasis added). In contrast, the qualifying criteria set forth in 8 C.F.R. § 214.2(h)(4)(iii)(A) speak much more broadly of "a degree" and omit any requirement of a degree in "a specific specialty." *See, e.g.*, 8 C.F.R. § 214.2(h)(4)(iii)(A)(1) (position qualifies if "*[a] baccalaureate or higher degree* or its equivalent is normally the minimum requirement for entry into the particular position") (emphasis added).

In the decision under review, USCIS acknowledged this discrepancy, but explained in detail how it has sought to harmonize the language and its rationale for doing so:

> 8 CFR § 214.2(h)(4)(iii)(A) must logically be read together with INA § 214(i)(1) [codified at 8 U.S.C. § 1184(i)(1)] and 8 CFR 214.2(h)(4)(ii). Hence, the criteria stated in 8 CFR § 214.2(h)(4)(iii)(A) should logically be read as being necessary but not necessarily sufficient to meet the statutory and regulatory definition of specialty occupation. To otherwise interpret this section as stating the necessary and sufficient conditions for meeting the definitions of specialty occupation would result in particular positions meeting a condition under 8 CFR § 214.2(h)(4)(iii)(A) but not the statutory or regulatory definition. *To avoid this illogical result . . . USCIS consistently interprets the term "degree" in the criteria at 8 CFR §*

6

> *214.2(h)(4)(iii)(A) to mean not just any bachelor's or higher degree, but one in a specific specialty that is directly related to the proffered position.*

AR 5 (emphasis added). Taylor Made challenges this interpretive move, suggesting it "eviscerate[s] any meaning [8 CFR § 214.2(h)(4)(iii)(A)] has to offer" and "unlawfully contradicts the promulgated degree requirement" in that section. Pl.'s MSJ at 33–34.

This Court, however, has already endorsed USCIS's interpretation of these provisions. *See Sagarwala v. Cissna*, 387 F. Supp. 3d 56, 66 (D.D.C. 2019). Specifically, it agreed with USCIS that "§ 214.2(h)(4)(iii)(A) must be read in context, not in a vacuum." *Id.* It noted the narrower definitions of "specialty occupation" that exist in the INA statute and elsewhere in the regulations, and observed that "[plaintiff's] proposed interpretation—under which any job requiring a bachelor's degree would be eligible—risks expanding H-1B availability beyond those prescribed limitations." *Id.* Other courts have reached the same conclusion. *See Raj & Co. v. USCIS*, 85 F. Supp. 3d 1241, 1246 (W.D. Wash. 2015) (finding it "well-settled in the case law" that a generalized bachelor's degree requirement does not qualify a position as a "specialty occupation" and noting that "requiring [only] a generalized bachelor degree would run contrary to congressional intent to provide a visa program for specialized, as opposed to merely educated, workers").

This is not to say that a position must require a degree in one particular major or field of study. *See RELX, Inc. v. Baran*, 397 F. Supp. 3d 41, 54–55 (D.D.C. 2019) ("There is no requirement in the statute that only one type of degree be accepted for a position to be specialized. . . . Nowhere in the statute does it require the degree to come solely from one particular academic discipline."); *Residential Fin. Corp. v. USCIS*, 839 F. Supp. 2d 985, 997 (S.D. Ohio 2012) ("Diplomas rarely come bearing occupation-specific majors."). But there nonetheless must be some connection between the degree and the requirements of the position.

7

*See 3Q Digital, Inc. v. USCIS*, No. 19-cv-579, 2020 WL 1079068, at *3 (D.D.C. Mar. 6, 2020) ("Of course, common sense dictates that there must be some limits on what type of degree can qualify. . . . For example, it would defy logic to say that a marketing position is a specialty occupation if the company allows that position to be filled by someone with a degree only in biology (or vice versa)."); *Caremax, Inc. v. Holder*, 40 F. Supp. 3d 1182, 1187–88 (N.D. Cal. 2014) ("A position that requires applicants to have any bachelor's degree, or a bachelor's degree in a large subset of fields, can hardly be considered specialized.").[3]

For these reasons, the Court rejects the broader attack on USCIS's interpretation of its own regulations and proceeds to consider whether USCIS's application of those regulations—as interpreted—was arbitrary or capricious.

### B. USCIS's Analysis of the 8 C.F.R. § 214.2(h)(4)(iii)(A) Factors

In its motion for summary judgment, Taylor Made focuses on the agency's evaluation of the first three § 214.2(h)(4)(iii)(A) factors, *see* Pl.'s MSJ at 36–42, 43–44, and discusses the fourth (which somewhat overlaps with the second) in its opposition, *see* Pl.'s Opp'n to Def.'s XMSJ at 26–29, ECF No. 12. USCIS maintains that Taylor Made failed to qualify the position under any of the four criteria. *See* Def.'s XMSJ at 2. The Court will discuss each factor in turn, keeping in mind that it must consider only "whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment." *ExxonMobil Gas Mktg. Co. v. FERC*, 297 F.3d 1071, 1083 (D.C. Cir. 2002) (quoting *Citizens to Preserve Overton*

---

[3] In its briefing here, USCIS seems to accept a similar kind of formulation. *See* Def.'s XMSJ at 9 ("USCIS has consistently interpreted the INA's language of 'specific specialty' to require a correlation between the degree requirements for a particular position and the duties of that particular position."); *see also In re Petitioner*, 2013 WL 8124091 (INS), at *9 (A.A.O. Dec. 24, 2013) ("Since there must be a close correlation between the required specialized studies and the position, the requirement of a degree with a generalized title, such as business administration, without further specification, does not establish the position as a specialty occupation.").

*Park, Inc. v. Volpe*, 401 U.S. 402, 416 (1971)). It is not enough that the Court "would have come to a different conclusion" than the agency had it considered the matter *de novo*. *Conservation Law Found. v. Ross*, 374 F. Supp. 3d 77, 89 (D.D.C. 2019).

1. Whether "[a] baccalaureate or higher degree [in a specific specialty] or its equivalent is normally the minimum requirement for entry into the particular position"

In determining that the proffered position did not meet this criterion, USCIS relied in part on the DOL's *Occupational Outlook Handbook* (OOH), which it recognized as "an authoritative source on the duties and educational requirements of the wide variety of occupations that it addresses." AR 7; *see also Blacher v. Ridge*, 436 F. Supp. 2d 602, 609 (S.D.N.Y. 2006) ("Reliance on the Occupational Handbook is reasonable in determining whether a proposed position satisfies the requirements of a 'specialty occupation.'"). OOH's entry for "computer systems analyst" in turn explains that "[a] bachelor's degree in a computer or information science field is common, although not always a requirement. Some firms hire analysts with business or liberal arts degrees who have skills in information technology or computer programming." AR 7. Based on this language, USCIS determined that "a bachelor's level of training in a specific specialty is not required for the Computer Systems Analyst occupation. Many Computer Systems Analysts have liberal arts degrees and gained experience elsewhere." AR 8. "As result," the agency concluded, "the proffered position cannot be considered to have met this criterion." AR 8.

Despite the narrow scope of its review, the Court is unable to endorse USCIS's reading of the OOH or the conclusion it draws from it. The Handbook's statement that a bachelor's degree in computer or information science is "common, although not always a requirement" seems to support, rather than disprove, the proposition that "[a] baccalaureate or higher degree [in a specific specialty] or its equivalent is *normally* the minimum requirement for entry into the

9

particular position." 8 C.F.R. § 214.2(h)(4)(iii)(A)(1) (emphasis added). The fact that "some firms" hire analysts with general business or liberal arts degrees does not prove—or even suggest—that a specialty degree is not "normally" required. Again, the regulatory criterion is not whether such a degree is *always* required, or whether *some* employers do not require it.

Additionally, the OOH—on the very same page—notes that "[m]ost computer systems analysts have a bachelor's degree in a computer-related field." AR 461. The USCIS decision does not address this language, AR 7, and the agency's cross-motion for summary judgment here likewise makes no mention of it, as Taylor Made notes. Pl.'s Opp'n to Def.'s XMSJ at 18 ("The agency's motion, like its decision, does not acknowledge this passage in the OOH, and omits discussion of evidence in the record that shows 'most' have a degree in computer science."). Admittedly, that language is not couched in terms of an explicit requirement or condition of employment, but it strikes the Court as relevant, particularly when read in context with the already-discussed observation that a related degree is "common, although not always a requirement." Finally, the OOH also notes that a *master's* degree in computer science may be more appropriate for "more technically complex positions." AR 461. While again not determinative, when read in context, it does imply that a specialized bachelor's degree is the typical baseline requirement.

The court's analysis in *Next Generation Tech., Inc. v. Johnson*, 328 F. Supp. 3d 252 (S.D.N.Y. 2017) is relevant. There, the OOH entry for "computer programmer" explained that "some employers hire workers with an associate's degree," but went on to say that "[m]ost computer programmers have a bachelor's degree in computer science or a related subject." *Id.* at 267–68 (internal quotations omitted). Based on this language, the court concluded that "the Occupational Handbook arguably demonstrates that a bachelor's degree or higher in a specific

10

specialty is 'normal[ly]' the minimum requirement for entry into the position." *Id.* at 268 (alteration in original) (quoting 8 C.F.R. § 214.2(h)(4)(iii)(A)(1)).[4] Also helpful is *Xiaotong Liu v. Baran*, No. 18-cv-376, 2018 WL 7348851 (C.D. Cal. Dec. 21, 2018). In *Liu*, the court relied, in part, on "OOH language indicating that 'most' positions require a four-year bachelor's degree" to conclude that "the record establishes that the position normally requires a bachelor's degree or higher." *Id.* at *5. Most recently, Judge Lamberth found that *O\*Net* language indicating that "most" positions require a degree, but "some" do not, ultimately supported the petitioner. *See 3Q Digital, Inc.*, 2020 WL 1079068, at *3 ("[The regulation] does not say that a degree must always be required, yet the agency appears to have substituted the word 'always' for the word 'normally.' This is a misinterpretation and misapplication of the law, and [one that] effectively hold[s] the plaintiff to a higher standard than that which is set by the regulation . . .").

Some divergent authority comes from *Ajit Healthcare Inc. v. United States Dep't of Homeland Sec.*, No. 13-cv-1133, 2014 WL 11412671 (C.D. Cal. Feb. 7, 2014). There, the court found "at least a 'rational connection' between the Handbook description of the job in question and the conclusion that a [position] would not normally require a baccalaureate degree or higher" when the OOH provided that "[a]lthough bachelor's and master's degrees are the most common educational pathways to work in this field, some facilities may hire those with on-the-job

---

[4] In a footnote, USCIS suggests that *Next Generation* is inapposite because it relied in part on "an internal USCIS memorandum that has since been rescinded." Def.'s Reply Mem. at 9 n.5, ECF No. 13. It is true that the now-rescinded memorandum was further evidence weighing against the agency in that case. But *Next Generation* separately found that—for the reasons discussed above—the agency's interpretation simply "d[id] not represent a fair reading of the Occupational Handbook." 328 F. Supp. 3d at 267. That, in turn, supported the court's conclusion that USCIS's decision was arbitrary and capricious. *Id.* at 268. Whether *Next Generation* would have reached the same conclusion in the absence of the memorandum is unclear, but that does not mean its interpretation of the OOH language was wrong or inapplicable here.

experience instead of formal education." *Id.* at *4 (internal citation omitted). It was enough, *Ajit* concluded, that "the Handbook describes *a pathway* to the position that does not require any formal education." *Id.* (emphasis added). Another district court decision, distinguishing *Next Generation*, found that an OOH entry indicating that "[m]ost computer programmers have a bachelor's degree" did "not describe the normal minimum educational requirements of the occupation in a categorical fashion." *Innova Solutions, Inc. v. Baran*, 399 F. Supp. 3d 1004, 1013, 1015 (N.D. Cal. 2019).[5]

Aware that the precise OOH language at issue varies across these cases, the Court nonetheless finds the overall thrust of *Liu*, *Next Generation*, and *3Q Digital* more relevant and persuasive than *Ajit* and *Innova Solutions*.[6] If USCIS wants to discount OOH evidence indicating *both* that a specialty degree requirement is "common" and that "most" people in the position have a degree in a computer-related field, it cannot simply rely on the OOH's recognition that an unspecified number of contrary cases exist. That is not a rational treatment of

---

[5] *Innova Solutions* also seems to suggest that, if the OOH description indicates that some jobs in the field do not require a degree in the specialty, the employer must provide additional evidence indicating that its job is different from those that do not require the specialty degree. 399 F. Supp. 3d at 1015 (finding that petitioner "could not simply rely on the OOH profile," but "had the burden to show that the particular position offered . . . was among the Computer Programmer positions for which a bachelor's degree was normally required."). While this approach has some appeal in principle, it is unclear whether the OOH description provides enough detailed information to enable this kind of comparative analysis. It also significantly raises the burden on a petitioner—if an OOH description acknowledges, in passing, that a particular position *occasionally* does not require a specialty degree, a petitioner must somehow define a new subfield and muster supporting non-OOH evidence. This drastically reduces the value of the OOH as an authoritative resource. More fundamentally, it again seems to reframe the relevant question: whether a specialty degree is *normally* required. The fact that the OOH acknowledges some exceptions should not be fatal or even particularly significant.

[6] *Innova Solutions* and *Ajit* are also distinguishable on their facts: the OOH language at issue in those cases did not include a statement that a relevant bachelor's degree is "common, although not always a requirement." *See Innova Solutions*, 399 F. Supp. 3d at 1013; 2014 WL 11412671, at *4. As discussed, that OOH language is particularly helpful to Taylor Made.

12

the language in the OOH—a document that the USCIS decision itself recognizes as "authoritative"—or the regulation itself. AR 7. And because this reading of the OOH was crucial to USCIS's conclusion that the position did not qualify under this criterion, USCIS's decision must be remanded for reconsideration and further explanation.[7]

2. Whether "[t]he degree requirement is common to the industry in parallel positions among similar organizations" or the "particular position is so complex or unique that it can be performed only by an individual with a degree"

In evaluating this criterion, USCIS broke the requirement into two subparts and determined that Taylor Made failed to set forth satisfactory evidence under either prong.

Under the first prong: to determine whether the degree requirement is common in parallel positions, the agency reviewed Taylor Made's submission of four comparator job postings from companies in the industry. AR 9. However, the agency found that Taylor Made did not sufficiently explain how the comparator companies were similar to Taylor Made or establish that the comparator positions were actually parallel to Taylor Made's computer systems analyst position. AR 9–10. For example, one of the comparator positions was a "software developer" position, which is a separate occupation according to the OOH. AR 10. Additionally, some of duties of the comparator positions appeared to be more advanced than those of the Taylor Made position. AR 10. Having performed its own review of the job postings and the company descriptions, AR 688–92, along with the rest of the record, the Court cannot say that USCIS's determination was arbitrary, capricious, or an abuse of discretion.

---

[7] When an agency action violates the APA, "the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." *Fla. Power & Light Co. v. Lorion*, 470 U.S. 729, 744 (1985). After all, a reviewing court "is not generally empowered to conduct a *de novo* inquiry into the matter being reviewed and to reach its own conclusions based on such an inquiry." *Id.* However, the Court does take this opportunity to observe that the statute seems designed to apply to jobs like the one at issue and benefit talented, well-educated beneficiaries like Mr. Kannan.

As the second prong: to determine whether the position is so complex or unique that it can be performed only by an individual with a degree, USCIS focused on Taylor Made's description of the position's duties it provided. AR 10–11. USCIS ultimately found it insufficient because it "was generic in nature and provides no further detail as to the unique or complex nature of the proffered position." AR 10. Again, having considered the record, including the proffered job description, AR 245–48, the Court finds no basis to conclude that USCIS's decision to rely on the job description and reject it as insufficient was legally flawed.

3. Whether "[t]he employer normally requires a degree or its equivalent for the position"

As to this criterion, USCIS considered two main kinds of evidence submitted by Taylor Made: (1) a list of other employees and their educational qualifications; and (2) other job postings for positions at Taylor Made. AR 11–12. USCIS discounted the first category because, although the other employees had bachelor's degrees, nothing indicated that such degrees were actually required for the position. AR 11. And it discounted the second, because the job postings were different from the proffered position; in fact, as before, the positions were for the separate position of "software developer." AR 12.[8] Although Taylor Made is correct to argue that USCIS should not rely *only* on job titles, it points to no other evidence indicating that the jobs were, in fact, apt comparators in order to meet its burden of proof. After reviewing the employee information, AR 772–83, and the job postings at issue, AR 785–86, the Court finds that USCIS did not act arbitrarily or capriciously in rejecting the proffered evidence as insufficient.

---

[8] Indeed, in its letter accompanying the materials submitted in response to the RFE, Taylor Made itself acknowledges that "these ads are not for the Computer Systems Analyst job." AR 223.

4. Whether "[t]he nature of the specific duties are so specialized and complex that knowledge required to perform the duties is usually associated with the attainment of a baccalaureate or higher degree"

Finally, as to the fourth criterion, USCIS considered an expert opinion provided by Dr. Lavine,[9] as well as the duties of the position as described by Taylor Made.

First, USCIS did not credit Dr. Lavine conclusions, in part because it found he "rel[ied] on [Taylor Made's] description of the position rather than any specific study of the position at your organization" and "d[id] not demonstrate or assert in-depth knowledge of your business operations or how the duties of the position will actually be performed." AR 12. The Court is somewhat concerned by the agency's particular focus on the perceived failure of Dr. Lavine to conduct a "study." As his opinion relays, Dr. Lavine spoke with the President of Taylor Made, who was, in fact, the immediate supervisor for the position (recall that Taylor Made is a small, 10-person operation). AR 676. It is not clear to the Court what much more Dr. Lavine could reasonably be expected to have done; USCIS's decision suggested that he could have "visited your business, observed your employees, interviewed them about the nature of their work, or documented the knowledge that they apply to on the job," AR 12, but that seems like a lot of time and effort for an uncertain payoff, and there is no indication that these steps are usually treated as requirements. But USCIS's more general point seems to be that Professor Lavine took

---

[9] Taylor Made suggests that Professor Lavine's opinion was broadly relevant and should have been considered as probative evidence under the second criterion. *See* Pl.'s Opp'n to Def.'s XMSJ at 24. But, as discussed, USCIS criticized the opinion on general grounds, including that it did not "demonstrate a sound factual basis for the professor's conclusion about the education requirements for the proffered position" and "is not supported by copies or citations of research material." AR 12. Based on these perceived infirmities and others, the agency ultimately "discount[ed] the advisory opinion as not probative of *any* criterion of 8 C.F.R. § 214.2(h)(4)(ii)(A)." AR 12 (emphasis added). While the Court may not agree with USCIS's aggressive skepticism of Professor Lavine's opinion, the agency's own evaluation of expert evidence merits some deference.

Taylor Made's explanations and description at face value, without conducting a sufficiently rigorous independent evaluation. *See* AR 12 ("There is no evidence that the professor knew any more about the specific duties of the position than what you provided."). While the Court may not necessarily agree with this assessment, USCIS has explained its reasoning and is entitled to its own reasonable evaluation of an expert opinion. *See Sagarwala v. Cissna*, 387 F. Supp. 3d 56, 66 (D.D.C. 2019) ("USCIS could have, in its discretion, accepted [a] professional opinion, but, absent more support, the agency certainly was not required to.").

Second, the agency found Taylor Made's description of the duties of position indicated that it required "a certain amount of skill, training, and attention to detail," but did not "establish that the proffered position is any more specialized or complex than any other Computer Systems Analysts job." AR 12–13. The Court finds this statement, as far as it goes, to be a reasonable interpretation of the submitted evidence. However, for the reasons already discussed, *see* Section III.B.1 *supra*, the premise underlying USCIS's statement (*i.e.*, that the standard position does not require a specialty degree) needs to be reconsidered.

## IV. CONCLUSION

For the foregoing reasons, Plaintiff's motion for summary judgment is **GRANTED**, and Defendant's cross-motion for summary judgment is **DENIED**, to the extent that this Court finds that, in denying Taylor Made's petition, USCIS disregarded or failed to explain why it discounted substantial evidence in the record that supported a determination that Taylor Made had met the requirements for approval of an H-1B visa petition under 8 C.F.R. § 214.2(h)(4)(iii)(A)(1), and that USCIS's decision was therefore arbitrary and capricious. This matter is remanded to USCIS for further proceedings consistent with this Memorandum Opinion. A corresponding order is separately and contemporaneously issued.

Dated:  March 31, 2020                                          RUDOLPH CONTRERAS
                                                                United States District Judge